## SOPHRONIA CHAMBERLIN

v.

## CHARLES B. LESLIE.

GENERAL TERM, 1892.

*Motion by the defendant for a verdict properly granted.*

The action being for the recovery of the amount of a draft, *Held*, that there was no evidence tending to show that the defendant ever received the draft or its proceeds, and that the court properly directed a verdict for the defendant.

Assumpsit. Pleas, general issue and statute of limitations. Trial by jury at the December term, 1891, Caledonia county, START, J., presiding. At the close of the evidence the court directed a verdict for the defendant. Exceptions by the plaintiff. The opinion states the case.

*T. J. Deavitt* and *J. P. Lamson* for the plaintiff.

*Smith & Sloane* and *Alexander Dunnett* for the defendant.

The court properly directed a verdict if the evidence did not fairly tend to support the plaintiff's claim. A mere scintilla of proof is not enough. *Birney* v. *Martin*, 3 Vt. 236; *Maxwell, Admr.*, v. *Briggs*, 17 Vt. 176; *Dean* v. *Dean's Estate*, 43 Vt. 337; *Latremouille, Admr.*, v. *Bennington & Rutland R. R. Co.*, 63 Vt. 336; *Driggs* v. *Burton*, 44 Vt. 124; *Denny* v. *Williams*, 5 Allen 1.

The opinion of the court was delivered by

ROSS, Ch. J. This is an action of assumpsit, in which

the plaintiff seeks to recover of the defendant two hundred forty-nine and sixty hundredths dollars and interest, being a draft for that amount by W. W. Herrick, Paymaster U. S. A. on Assistant Treasurer of New York, payable to the plaintiff or order, and dated New York, June 14, 1865.

The draft was given to pay the plaintiff the bounty and back pay due her husband, who died in the service. At the close of the plaintiff's testimony the defendant moved the court to direct the jury to return a verdict in his favor, which the court did, against the exception of the plaintiff. This was error if there was any evidence tending to show that the defendant received the money on this draft. The defendant was called as a witness by the plaintiff, and testified plainly that he never saw or had the draft or money on it in any way. The plaintiff also testified that she never knew that she applied for her husband's bounty and back pay, and was told by the defendant that she could not obtain them, and that she never had the money on the draft. It was conceded she employed the defendant to procure a pension for her, which he did. It appeared from the evidence that application was made for the pension and for the bounty and back pay, contemporaneously, in the plaintiff's name, without any name being inserted in the papers as her attorney ; that the defendant and his late partner Rogers prepared and attended to the proper execution of the papers, and sent them to the department. It appeared that on June 14, 1865, the certificate of allowance of the bounty and back pay by the second auditor and second comptroller, with a receipt to Maj. W. W. Herrick, paymaster, was received. They were all in printed forms on one sheet of paper. The name of the paymaster was written in in a different handwriting from the signature, or the date and amount. The certificate of the amount due the deceased husband by the second auditor sent to the second comptroller refers to "vouchers herewith transmitted" ; and attached to the certificate of the two, as

presented in the county court, were the application, proof of marriage, and proof of identity of the plaintiff as the widow of the deceased soldier. These appear to have been one bundle of papers constantly kept together. They have the post-office address of the plaintiff in two places, and did not have the post-office address of any other person. Whether, therefore, these papers, including the receipt, were received from the second comptroller or from the paymaster, when returned to the latter they informed him of the post-office address of the plaintiff. The plaintiff signed the receipt and the defendant witnessed her signature, and sent the papers to the paymaster. The plaintiff admitted that she was told that all communications from the department would come addressed to her, and she supposed they did, but that she never received the draft from the paymaster nor the money thereon. The defendant denies that he ever received any communications from the department or paymaster on plaintiff's business. The plaintiff at times denies that the endorsement of her name on the draft was made by her, and at other times admits that it looks like her signature. She places her denial upon the ground that she never received the money on it. Her testimony shows that the National Bank of Newbury cashed the check June 26, 1865. She testifies, and produces some supporting testimony, that she was out of the State from April or May until after July 4 of that year. She also testifies that no papers on this business were sent to her during that time. She admits that at one time she received from the department a long envelope containing a check or draft which she got cashed without showing it to the defendant, but claims it was a pension check. But her testimony shows that her pension check of that date came from the St. Johnsbury pension agency through Theron Howard, who acted as her attorney to draw it, and who sent it, endorsed by him, to Leslie & Rogers, who endorsed it to the plaintiff. The paymaster's draft was not endorsed by

Leslie, nor by Leslie & Rogers, as would ordinarily be the case if they drew the money on it. This is substantially what was shown on the trial; and the question is, was there any evidence tending to show that the defendant or Leslie & Rogers received the paymaster's draft, or the money on it? It is not contended that there was any direct testimony tending to show that he or they did. But it is contended that, inasmuch as the defendant witnessed the plaintiff's signature to the receipt for the bounty and back pay, and sent it with a letter to the paymaster, it may be presumed, from the ordinary course of business, that the draft was returned to him, when the plaintiff testifies she did not receive it, and was out of the State at the time. But we do not think that any such presumption arises, when the plaintiff's testimony shows that the papers sent the paymaster with the receipt bore her post-office address, and did not contain the name of anyone as her attorney, nor was the claim assigned to any one; and when she calls the defendant to the stand, and he testifies that he did not receive the draft nor the money upon it, no presumption arises that the paymaster would send the draft to the defendant even if, in the letter accompanying the receipt, he gave his post-office address, which is not shown. The defendant was not entitled to the draft, and so far as the papers, which were sent with the receipt to the paymaster, show, was a stranger to it. Both the plaintiff and defendant testify positively that neither received it. We are not shut up to the conclusion that one of them must have received it. It was in the possession of the bank, but how is not shown. Some other one might have passed it to the bank as well as the defendant. It came through the mail, and might have been stolen. But it is more probable that the draft which the plaintiff testifies that she received from the department and obtained the money on, without showing it to the defendant, was the draft in controversy, and that after the lapse of twenty-five years she has forgotten about it. But

however this is, we do not discover any testimony which tended to show that the defendant received the draft or the money on it.

*Judgment affirmed.*